No. 96-248

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

LYNDA M. DOLAN,

Defendant and Appellant.


APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

J. G. Shockley, Attorney at Law, Victor, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Jennifer Anders, Assistant Attorney General;
Helena, Montana

Robert L. "Dusty" Deschamps III, Missoula County
Attorney, Missoula, Montana


Submitted on Briefs: April 10, 1997

Decided:    June 24, 1997
Filed:


_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Lynda M. Dolan was convicted in Ravalli County Justice Court of the offense of driving under the influence of alcohol, in violation of 61-8-401, MCA. She appealed to the District Court for the Twenty-First Judicial District in Ravalli County and moved to suppress evidence obtained from two blood tests. The District Court denied Dolan's motion to suppress and denied her motion for reconsideration. Following a jury trial, Dolan was convicted of the offense of driving under the influence of alcohol. Dolan appeals the District Court's order which denied her motion to suppress. In addition, Dolan appeals her conviction and sentence for the offense of driving under the influence of alcohol. We reverse the order and judgment of the District Court and remand to that court for proceedings consistent with this opinion.

We address two issues on appeal:

1. Did the District Court err when it denied Dolan's motion to suppress evidence of the results of a nonconsensual warrantless blood alcohol test requested by the Montana Highway Patrol and supplied by the Community Medical Center?

2. Did the District Court err when it denied Dolan's motion to suppress evidence of the results of a routine blood sample taken by the Community Medical Center and obtained by the State pursuant to an investigative subpoena?

FACTUAL BACKGROUND

Lynda Dolan was involved in a motor vehicle accident at 5:27 p.m. on December 19, 1994, when the vehicle she was operating collided with the rear-end of a stopped vehicle on Highway 93 near Florence. Both vehicles were extensively damaged and the drivers of both vehicles sustained serious injuries. Missoula Emergency Services, Inc., dispatched an ambulance, which transported Dolan to the Community Medical Center in Missoula.

Montana Highway Patrol Supervisor Warren Schiffer and Montana Highway Patrol Officer Mike Reddick arrived at the accident scene after Dolan had been removed by the Missoula Emergency Services ambulance. Because Dolan was no longer present at the scene, neither officer communicated with or interviewed her personally to determine her condition at the time of the accident. In addition, neither officer inspected Dolan's vehicle at the accident scene. Officer Reddick, who was the primary investigator at the scene, testified later that he spoke with someone at the scene who informed him that Dolan's breath had smelled of alcohol. Although Officer Reddick believed that the informant was a paramedic, he did not obtain the informant's name or verify his position as a medical technician. On the basis of the informant's statement, however, and because the injuries were serious enough to warrant investigation as a possible negligent

homicide,
Officer Reddick contacted Officer Tom Monzon in Missoula and requested that he obtain a blood sample from Dolan for blood alcohol content analysis.

At 6:41 p.m., the Medical Center drew a routine blood sample for medical treatment purposes.  That test showed Dolan's blood alcohol level to be .109 grams of alcohol per 100 liters of blood.

Officer Monzon arrived at the Community Medical Center at approximately 7:00 p.m. and requested that the hospital withdraw another blood sample from Dolan.  A hospital nurse, Dianne Peterson, took a sample of Dolan's blood at approximately 7:12 p.m.  The results of that test later revealed that Dolan's blood alcohol content was .08 grams per 100 liters of blood.  Officer Monzon did not arrest Dolan prior to ordering the blood test, nor did he obtain Dolan's consent to the blood test, pursuant to    61-8-402, MCA.

On January 31, 1995, Dolan was charged by complaint in the Justice Court for Ravalli County with the offense of driving under the influence of alcohol, pursuant to 61-8-401, MCA.  On May 11, 1995, the State requested and received an investigative subpoena duces tecum compelling the production of Dolan's medical  records from the Community Medical Center relating to Dolan's blood alcohol level from the time of her admission until midnight of December 19, 1994.   After the State received those medical records, Dolan filed a motion in which she sought the suppression of (1) the results of the routine blood sample taken by the Community Medical Center at 6:41 p.m. on December 19, 1994, as well as all medical records, memoranda, and  related documents and reports relating to that blood sample; and (2) the results of the blood alcohol sample ordered by the State and supplied by the Community Medical Center at 7:12 p.m. on December 19, 1994.  The Justice Court denied Dolan's motion to suppress and convicted Dolan of the offense of driving under the influence of alcohol.

Dolan appealed to the District Court for the Twenty-First Judicial District in Ravalli County and filed a similar motion to suppress the results of the two blood tests. In her motion, Dolan maintained that the nonconsensual blood test ordered by the State should be suppressed because it violated both Montana's implied consent statute found at  61-8-402, MCA, and the Fourth Amendment to the United States Constitution.  In addition, Dolan maintained that the Community Medical Center's routine blood sample should be suppressed because those results were improperly acquired by the State pursuant to an investigative subpoena which was issued on the basis of the State's illegal blood test.

On November 1, 1995, the District Court issued an order in which it denied Dolan's motion to suppress the results of the two blood tests.  In its order, the court concluded that the State-ordered blood test should not be suppressed because (1) the State had not violated the implied consent statute since that statute was not triggered until

Dolan was arrested for the offense of driving under the influence of alcohol; and (2) the State had not violated the search and seizure clause of the Fourth Amendment of the United States Constitution because the State had possessed the requisite probable cause to order a warrantless seizure of Dolan's blood. In addition, the court concluded that the routine hospital blood test results should not be suppressed because the State-ordered blood test, upon which the subpoena for the hospital records was based, was not illegally obtained.

On December 11, 1995, a jury found Dolan guilty of the offense of driving under the influence of alcohol, in violation of 61-8-401, MCA. The District Court stayed imposition of Dolan's sentence pending her appeal to this Court.

## STANDARD OF REVIEW

In this case, the District Court denied Dolan's motion for suppression of two blood tests taken after her accident on December 19, 1994. We review a district court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. State v. New (1996), 276 Mont. 529, 533, 917 P.2d 919, 921. "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if this Court has a definite and firm conviction that the district court has made a mistake." State v. Cassell (Mont. 1996), 932 P.2d 478, 479, 53 St. Rep. 1459, 1460.

## ISSUE 1

Did the District Court err when it denied Dolan's motion to suppress evidence of the results of a nonconsensual warrantless blood alcohol test requested by the Montana Highway Patrol and supplied by the Community Medical Center?

Dolan asserts that the District Court erred when it considered evidence from the Justice Court files, in the form of Dolan's medical records, to support its denial of the motion to suppress the State-ordered test. In addition, Dolan maintains that the District Court erred when it concluded that the nonconsensual blood test met the requirements of the "exigent circumstances" exception to the warrant requirements of the Fourth Amendment to the United States Constitution, and Article II, Section 11, of the Montana Constitution. Specifically, Dolan contends that Officer Monzon did not have the requisite probable cause, at the time he ordered the test, to believe that she had been driving under the influence of alcohol. Therefore, Dolan maintains that the State-ordered test was an unconstitutional search and seizure of her person prohibited by both the United States and

Montana Constitutions.

It is well established that the administration of a blood test for the purpose of
obtaining evidence of guilt constitutes a "search" and a "seizure" which triggers the
constitutional protections of the Fourth Amendment to the United States Constitution, and
Article II, Section 11, of the Montana Constitution.  Schmerber v. California (1966), 384
U.S. 757, 767, 86 S. Ct. 1826, 1834, 16 L. Ed. 2d 908, 918; State v. Kirkaldie (1978),
179 Mont. 283, 289, 587 P.2d 1298, 1302. A warrantless seizure of blood may,
however, be permissible under both constitutional provisions if it falls within one of the
exceptions to the warrant requirement.  State v. Hyem (1981), 193 Mont. 51, 56, 630
P.2d 202, 205.  One such exception, adopted by the United States Supreme Court in
Schmerber, 384 U.S. 757,  provides that a nonconsensual warrantless blood sample may
be taken without violating the defendant's constitutional rights if exigent circumstances
exist.  See also Winston v. Lee (1985), 470 U.S. 753, 105 S. Ct. 1611, 84 L. Ed. 2d
662. Specifically, the "exigent circumstances" exception allows for a warrantless search
and seizure of a person's blood so long as three conditions are met:
First, an officer ordering that a blood sample be taken must reasonably
believe he is "confronted with an emergency, in which the delay necessary
to obtain a warrant, under the circumstances, threaten[s] 'the destruction of
evidence.'"  Second, the officer must have probable cause to believe the
suspect has been driving under the influence of alcohol.  Third, the
procedures used to extract the blood must be reasonable; that is, the sample
must be taken by trained medical personnel in accordance with accepted
practices.

United States v. Chapel (9th Cir. 1995), 55 F.3d 1416, 1418 (citing Schmerber, 384 U.S.
at 770).

In this case, the District Court held that the results of the blood alcohol sample
ordered by Officer Monzon and supplied by the Community Medical Center were
admissible based on the exigent circumstances exception to the search warrant
requirement.  Specifically, the court concluded that emergency circumstances existed
which required immediate withdrawal of Dolan's blood because her blood alcohol level
was plunging rapidly under aggressive IV therapy necessary to save her life.  In addition,
the court concluded that the medical information available to Officer Monzon upon his
arrival at the hospital, combined with the statements made to Officer Reddick at the
accident scene to the effect that Dolan had smelled of alcohol, was "collectively sufficient
to warrant a conclusion that probable cause existed to believe a crime had been committed
and to further conclude that preservation of the evidence under the circumstances
warranted a warrantless seizure of [Dolan's] blood sample under the exigent
circumstances exception to the search warrant requirement."

It is well established that "[b]efore a law enforcement officer may lawfully

take

a blood sample without consent or a warrant, he or she must have probable cause to believe that the suspect has committed an offense of which the current state of one's blood will constitute evidence." Chapel, 55 F.3d at 1419 (citing Schmerber, 384 U.S. at 770). The requirement of probable cause is satisfied "if the facts and circumstances within the officer's personal knowledge, or upon information imparted to him by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense." State v. Lee (1988), 232 Mont. 105, 109, 754 P.2d 512, 515. Such probable cause cannot be based upon an officer's suspicion alone, without some substantiated evidence that a crime is or has been committed, regardless of what a subsequent search may disclose. State v. Rader (1978), 177 Mont. 252, 257, 581 P.2d 437, 440.

In this case, the District Court concluded that collective evidence existed to establish probable cause under the "exigent circumstances" exception, based on its finding that "two law enforcement officers at separate locations had received 'reasonably trustworthy information' from emergency medical personnel upon which to rely in determining probable cause." Specifically, the court found that: (1) Officer Reddick had been told by an emergency care provider at the accident scene that Dolan smelled of alcohol; and (2) Officer Monzon had access to medical information about Dolan's consumption of alcohol upon his arrival at the Community Medical Center. Based on those findings, the court held that the information available to both officers was sufficient to collectively establish probable cause.

Our review of the evidence available to both Officer Reddick and Officer Monzon, however, suggests that neither officer had personal knowledge of Dolan's consumption of alcohol, nor had either officer received information of that consumption from a reliable source prior to ordering a test of Dolan's blood alcohol content. First, neither officer communicated with Dolan or interviewed her personally to determine whether there were signs that she had consumed alcohol prior to her accident. In addition, although Officer Reddick spoke with someone at the accident scene who informed him that Dolan had smelled of alcohol after the accident, he did not obtain the informant's name or verify whether the informant had actually personally observed or treated Dolan at the accident scene. Finally, although Officer Monzon was present at the hospital at the time he ordered Dolan's blood test, there is no evidence that he spoke with any medical personnel or received any medical information about Dolan's alcohol consumption prior to ordering that test. The fact that such information may have been available to him upon his arrival at the hospital is not sufficient to establish that Monzon was in possession of that information when he ordered the test.

Based on our review of the record, we hold that the District Court's finding

that
Officers Reddick and Monzon "had received 'reasonably trustworthy information' from emergency medical personnel upon which to rely in determining probable cause" is not supported by substantial credible evidence.  In fact, in a document submitted to the District Court, the State admitted:

[Officer Reddick] testified that he did not obtain the name of the person who he talked to, or even precisely what the person's capacity was other than that he believed the person was a paramedic.  Finally, [Dolan] had been removed from the scene by ambulance before [Officer Reddick] arrived, so the officer had no personal basis to know whether the paramedic had treated or even actually observed [Dolan].

It is a clear rule of law that "[c]orroboration of an informant's information through other sources is necessary when the information is hearsay or the informant is anonymous." State v. Rinehart (1993), 262 Mont. 204, 212, 864 P.2d 1219, 1224.  In this case, Officer Reddick made no attempt to learn the identity of his anonymous informant or to corroborate the information he received from that informant.

Furthermore, although the District Court cited hospital records which confirmed that medical personnel at the hospital were aware that Dolan smelled of alcohol when she arrived in the emergency room, the State submitted no evidence that Officer Monzon possessed such information prior to ordering Dolan's blood test.  Suspicion of either officer alone, without substantiated evidence that a crime had been committed, was not enough to establish probable cause, regardless of what the officers'  later search may have disclosed.  Rader, 177 Mont. at 257, 581 P.2d at 440.

Therefore, in the absence of either officer's personal knowledge of Dolan's consumption of alcohol, and in the absence of clear proof that either officer had received information of Dolan's alcohol consumption from a reliable source prior to ordering the blood alcohol test, we hold that the District Court erred when it concluded that probable cause existed  to believe that Dolan had operated her vehicle under the influence of alcohol, in violation of   61-8-401, MCA.  Because we conclude that probable cause did not exist to order a sample of Dolan's blood, we further hold that the District Court erred when it concluded that the State's nonconsensual warrantless blood test met the requirements of the "exigent circumstances" exception to the warrant requirements of the Fourth Amendment to the United States Constitution, and Article II, Section 11, of the Montana Constitution.  We therefore hold that the State-ordered blood test constituted an unlawful "search" and "seizure" of Dolan's person prohibited by both the United States and Montana Constitutions.  We reverse the District Court's order which denied Dolan's

motion to suppress the evidence of the State-ordered blood test results.

                                ISSUE 2

Did the District Court err when it denied Dolan's motion to suppress evidence of the results of a routine blood sample taken by the Community Medical Center and obtained by the State pursuant to an investigative subpoena?

Dolan maintains that the District Court erred when it denied her motion to suppress the results of a routine blood sample taken by the Community Medical Center and obtained by the State pursuant to an investigative subpoena duces tecum. Specifically, Dolan asserts that the sole basis for the State's subpoena was the results of the State-ordered blood test, and that, because that blood test was an unconstitutional search of her person pursuant to both the United States and Montana Constitutions, the evidence obtained pursuant to the subpoena should be suppressed as "fruits of the poisonous tree."

The issuance of an investigative subpoena is governed by  46-4-301, MCA, which provides:

Whenever a prosecutor has a duty to investigate alleged unlawful activity, any justice of the supreme court or district court judge of this state may cause subpoenas to be issued commanding the persons to whom they are directed to appear before the prosecutor and give testimony and produce books, records, papers, documents, and other objects as may be necessary and proper to the investigation.  A subpoena may be issued only when it appears upon the affidavit of the prosecutor that the administration of justice requires it to be issued.

(Emphasis added.)

In this case, the prosecutor submitted an affidavit in support of an investigative subpoena to the District Court for the Fourth Judicial District in Missoula County. In support of his claim that "the administration of justice requires the issuance of an Investigative Subpoena Duces Tecum," the prosecutor listed the following facts:

Lynda M. Dolan was involved in an automobile accident on Highway 93 at approximately 5:23 p.m. on December 19, 1994.  She rear-ended another motorist and suffered serious injuries and was taken to Community Hospital.  Approximately one and one-half hours after the accident Ms. Dolan's blood alcohol level was .08.  The Montana Highway Patrol was advised that blood had been taken prior to this time and the results were over the legal limit.

In State v. Nelson (Mont. June 24, 1997), No. 96-181, slip op. at 17, this Court held that before an investigative subpoena may be issued to compel information that is protected by the constitutional right of privacy, the prosecutor must show probable cause that an unlawful activity has occurred.  We held that:

[I]f the right of informational privacy is to have any meaning it must, at a minimum, encompass the sanctity of oneþs medical records.  In contrast to telephone company billing records, for which there is no reasonable

expectation of privacy, Hastetter v. Behan (1982), 196 Mont. 280, 283, 639 P.2d 510, 511, medical records fall within the zone of privacy protected by Article II, Section 10, of the Montana Constitution.  As the Montana Legislature has recognized, "health care information is personal and sensitive information that if improperly used or released may do significant harm to a patient's interest in privacy and health care or other interests." Section 50-16-502(1), MCA. Medical records are  quintessentially þprivateþ and deserve the utmost constitutional  protection.


        . . . .


        When an investigative subpoena seeks discovery of protected medical records or information, the subpoena can be likened to a search warrant which must satisfy the strictures of the 4th Amendment and Article II, Section 11, of the Montana Constitution.  A search warrant can only issue upon a showing of þprobable cause.þ  In the context of search and seizure law, probable cause exists when facts and circumstances presented to a magistrate would warrant an honest belief in the mind of a reasonable and prudent person that an offense has been, or is being, committed and that property (or information) sought exists at the place designated.  Section 46-5-221, MCA; [State v.] Siegal [(Mont. 1997)], 934 P.2d [176,] at 193[, 54 St. Rep. 158, 171]. We hold that in order to establish that there is a compelling state interest for the issuance of an investigative subpoena for the discovery of medical records, the State must show probable cause to believe that an offense has been committed and medical information relative to the commission of that offense is in the possession of the person or institution to whom the subpoena is directed.

Nelson, slip op. at 15, 17.
        In this case, Dolan's medical records requested by the prosecutor are protected by
a constitutional right of privacy, as provided by Article II, Section 10, of the Montana
Constitution.  Therefore, pursuant to our reasoning in Nelson, the prosecutor in this case
was required to show probable cause that Dolan had committed a crime before the investigative subpoena could issue pursuant to  46-4-301, MCA.  Nelson, slip op. at 17.
        In his affidavit, the prosecutor lists only two facts to establish probable cause.
First, the prosecutor relates the results of the State-ordered blood test, which indicated
that Dolan's blood alcohol level was .08 grams per 100 liters of blood approximately one
and one-half hours after the accident.  Second, the prosecutor states that: "The Montana
Highway Patrol was advised that blood had been taken prior [to the State-ordered test]
and the results were over the legal limit."
        We hold that neither the results of the State-ordered blood test, nor the fact that
an unnamed  source may have informed the highway patrol about Dolan's earlier blood

test, is  sufficient to establish probable cause that Dolan had committed a crime.  First, because the State-ordered blood test was an unlawful search and seizure of Dolan's person pursuant to the United States and Montana Constitutions, that search may not be used as the basis for the issuance of a subpoena to obtain additional information.  It is well established that information derived from an illegal search should be suppressed pursuant to the "fruits of the poisonous tree" doctrine.  See, e.g., Silverthorne Lumber Co. v. United States (1920), 251 U.S. 385; State v. New (1996), 276 Mont. 529, 917 P.2d 919; State v. Pearson (1985), 217 Mont. 363, 704 P.2d 1056.  As we stated in New, 276 Mont. at 535, 917 P.2d at 923, "[t]he ["fruits of the poisonous tree"] doctrine forbids the use of evidence which comes to light as a result of the exploitation of an initial illegal act of the police."  Therefore, because we have determined that the original State-ordered blood test was an unlawful search by the Montana Highway Patrol, we now hold that that test may not be used to establish probable cause to obtain further information by means of an investigative subpoena duces tecum.

Our holding that the State-ordered blood test may not be used to establish probable cause does not end the inquiry, however.  Although the prosecutor's affidavit in support of an investigative subpoena relied primarily on the results of that test to establish probable cause, it also stated the additional fact that " [t]he Montana Highway Patrol was advised that blood had been taken prior [to the State-ordered test] and the results were over the legal limit."  We conclude that that fact, standing alone, is insufficient to establish probable cause that Dolan had committed the crime of driving under the influence of alcohol, in violation of   61-8-401, MCA.

First, the affidavit does not list the source of the information.  As we stated above, the test for probable cause is whether "the facts and circumstances within the officer's personal knowledge, or upon information imparted to him by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense."  State v. Lee (1988), 232 Mont. 105, 109, 754 P.2d 512, 515.  In this case, there is no indication that the unnamed source is "reliable." Furthermore, the inference in the affidavit is that the source was a health care provider who had knowledge of Dolan's condition at the Community Medical Center; however, a health care provider could not lawfully have imparted information about Dolan's condition, beyond a

description of Dolan's general physical condition, without Dolan's authorization, pursuant to 50-16-530, MCA. Unless we are shown otherwise, we have to presume that the health care providers at the Community Medical Center would comply with the law regarding their patients' rights to privacy. Therefore, we hold that the prosecutor's statement that the highway patrol had received information about the results of the hospital's routine blood sample is insufficient to establish probable cause for the issuance of an investigative subpoena, pursuant to 46-4-301, MCA.

Because we hold that the prosecutor in this case did not establish probable cause necessary for the issuance of an investigative subpoena, we reverse the order of the District Court which denied Dolan's motion to suppress evidence of the routine hospital blood test and we reverse Dolan's conviction and sentence for the offense of driving under the influence of alcohol, in violation of 61-8-401, MCA, which was necessarily based in part on that evidence. We remand to the District Court for proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:
/S/ J. A. TURNAGE
/S/ KARLA M. GRAY
/S/ WILLIAM E. HUNT, SR.
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON