FILED

07/07/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0697

DA 17-0697

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 175

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MONTE KAYMEN FUNKHOUSER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC-17-107(a)
Honorable Gregory G. Pinski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Haley Connell Jackson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

            Joshua A. Racki, Cascade County Attorney, Amanda L. Lofink, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs: May 20, 2020

Decided: July 7, 2020

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Appellant Monte Kaymen Funkhouser (Funkhouser) appeals a June 15, 2017 order from the Eighth Judicial District Court, Cascade County, denying his motion to suppress. Funkhouser also appeals the District Court's September 29, 2017 written sentencing order.[1] We restate the dispositive issue on appeal as follows:

> *Does a field test of residue in a syringe lawfully seized pursuant to a search incident to arrest constitute a search requiring law enforcement to first obtain a warrant?*

¶2 We affirm the District Court's denial of Funkhouser's motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On the night of January 23, 2017, Great Falls Police Officer Kaleb Larson (Larson) initiated a vehicle stop of a Ford Escape which had a suspended registration. Funkhouser was driving the vehicle when it was stopped. At the time of the vehicle stop, Larson knew Funkhouser was a suspect from a previous theft case. Larson also knew that Funkhouser had previously been charged with multiple drug offenses in Utah and that one of Funkhouser's relatives had recently called police voicing concerns about Funkhouser's alleged distribution of methamphetamine and heroin. During the stop, Funkhouser informed Larson that his driver's license was suspended and that he did not have vehicle insurance. After learning this information, Larson placed Funkhouser under arrest.

---

[1] Funkhouser appeals the District Court's written sentencing order which: (1) improperly imposed excess court information technology fees under § 3-1-317(1)(a), MCA; and (2) incorrectly stated that Funkhouser's sentences for Counts I through III would run concurrently, when the oral pronouncement of sentence dictated concurrent sentences for Counts I through IV. Both of these issues have been conceded by the State, and we remand for the limited purpose of correcting these errors in the District Court's written sentence.

2

¶4     While searching Funkhouser incident to his arrest, Larson patted down Funkhouser and located a used syringe in his front jacket pocket. The syringe contained a small amount of clear fluid. Funkhouser told Larson that he was a diabetic and that he used syringes to inject insulin. Funkhouser also stated that there was a box of insulin inside his vehicle and asked Larson to locate it. Larson searched Funkhouser's car but did not locate any insulin;[2] instead, Larson observed several additional used syringes on the vehicle's floorboard. Larson, believing that the syringe found on Funkhouser's person contained trace amounts of methamphetamine, placed the syringe into an evidence bag and transported it to the jail along with Funkhouser.

¶5     When booking Funkhouser into jail, Larson conducted a chemical "field test" on the contents of Funkhouser's syringe to determine whether the small amount of liquid remaining in the syringe contained methamphetamine. The field test came back positive for methamphetamine. Larson then sent the syringe, which still contained a trace amount of liquid residue, to the Montana State Crime Lab, where an additional forensics test involving a gas chromatograph and mass spectrometer confirmed the field test's findings. The forensics test also revealed that no insulin was present within the syringe. The State did not obtain a search warrant prior to conducting either chemical test on the residual contents of Funkhouser's syringe.

---

[2] In its denial of Funkhouser's motion to suppress, the District Court made a fact finding that Funkhouser did not possess a valid prescription for insulin because he failed to introduce sufficient evidence in support of this contention. On appeal, Funkhouser maintains that he is a diabetic with a lawful insulin prescription but asserts that the issues raised in his appeal are not dependent upon him proving this fact.

¶6    The State ultimately charged Funkhouser with one count of felony criminal possession of dangerous drugs, one count of misdemeanor criminal possession of drug paraphernalia, and three misdemeanor traffic offenses. On May 11, 2017, Funkhouser filed a motion to suppress the evidence discovered during Officer Larson's field test of his syringe at the jail. Funkhouser conceded that the vehicle stop, his arrest, the search incident to the arrest, and the seizure of his syringe were lawful. In his motion to suppress, Funkhouser invoked the Fourth Amendment of the United States Constitution, Article II, Sections 10 and 11 of the Montana Constitution, and § 46-5-101, MCA, to argue that Larson's field test of the syringe's contents without a warrant constituted an unlawful "search" that violated his reasonable expectations of privacy. The District Court held an evidentiary hearing on June 14, 2017, and ultimately denied Funkhouser's motion to suppress, citing the Supreme Court's clear language on chemical field tests in *United States v. Jacobsen*, 466 U.S. 109, 122-24, 104 S. Ct. 1652, 1661-62 (1984) (holding that a field test does not require a warrant). The District Court's denial also relied, in part, on the inevitable discovery doctrine, ruling that the contents of Funkhouser's syringe would have eventually been discovered as part of a routine jailhouse inventory search. *See State v. Hilgendorf*, 2009 MT 158, ¶¶ 26-27, 350 Mont. 412, 209 P.3d 401 (holding that the naked-eye discovery of marijuana in a container found on defendant's person during a pat down was not a "search" requiring a warrant because the marijuana would have inevitably been discovered as part of a jailhouse inventory search).

¶7    At trial, the State moved to exclude Funkhouser from making any further argument or commentary regarding whether there was a legal search; whether the State needed a

warrant to search Funkhouser or his property; and whether the State needed a warrant to search the syringe and its contents. When presented with this motion, Funkhouser's attorney replied, "In this particular case, Your Honor, I have no intention of talking about the syringe," permitting the District Court to grant the State's motion. Later, during trial, both the syringe and the report from the Montana State Crime Lab were admitted as evidence without objection from Funkhouser's counsel.

¶8 On July 31, 2017, Funkhouser was found guilty of five counts: criminal possession of dangerous drugs (Count I), failure to carry proof of liability insurance (Count II), driving while suspended/revoked (Count III), criminal possession of drug paraphernalia (Count IV), and operating a vehicle with an improper registration (Count V). On September 13, 2017, the District Court imposed a fine for Count V and ordered concurrent sentences for Counts I through IV, resulting in a total sentence of five years with two years suspended.

¶9 Funkhouser appeals.

**STANDARD OF REVIEW**

¶10 This Court reviews a district court's denial of a motion to suppress to determine whether its findings of fact are clearly erroneous and whether its interpretation and application of the law is correct. *State v. Kenfield*, 2009 MT 242, ¶ 15, 351 Mont. 409, 213 P.3d 461. We will affirm a district court when it reaches the correct result, even if it is for the wrong reason. *In re B.A.M.*, 2008 MT 311, ¶ 24, 346 Mont. 49, 192 P.3d 1161.

5

## DISCUSSION

¶11 Preliminarily, we address the procedural posture of this case to assess what issue has been properly preserved and is before us. Funkhouser contends that both the initial field test conducted at the jail by Larson and the subsequent chemical test conducted by the Montana State Crime Lab were unlawful "searches" that required a warrant. Yet, Funkhouser's contention about the legality of the crime lab testing is raised for the first time on appeal.

¶12 In order to preserve an objection to the admission of evidence for appeal, the objecting party must make a timely and specific objection on the record. M. R. Evid. 103(a)(1); *State v. Clausell*, 2001 MT 62, ¶ 25, 305 Mont. 1, 22 P.3d 1111. This Court has long held that appellants may not change their theories on appeal from those presented in district court. *State v. Neiss*, 2019 MT 125, ¶ 48, 396 Mont. 1, 443 P.3d 435. Generally, "[F]ailure to make a timely objection during trial constitutes a waiver of the objection." Section 46-20-104(2), MCA; *Neiss*, ¶ 48.

¶13 Under this precedent, Funkhouser's challenge to the testing conducted by the Montana State Crime Lab has not been preserved for appeal. In his motion to suppress before the District Court—and during the corresponding evidentiary hearing on that motion—Funkhouser only objected to the initial field test conducted by Larson. He did not raise any objection about the crime lab's testing of the contents of his syringe. Furthermore, at the outset of Funkhouser's trial, the State specifically moved to exclude any additional argument regarding whether a search warrant was required to examine the contents of Funkhouser's syringe. Funkhouser's counsel indicated that he had no objection

and, consequently, the District Court granted the State's motion. The record also reflects that Funkhouser's counsel did not object to the subsequent admission of the crime lab's report. As a result, Funkhouser has not preserved for our review whether the testing conducted by the crime lab required a warrant. Instead, this Court will only consider whether Larson's initial field test required a warrant, as this argument was properly preserved for appeal in Funkhouser's motion to suppress before the District Court. We now turn to this issue.

¶14 The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures. Article II, Sections 10 and 11 of the Montana Constitution provide similar, but heightened, protections. *See* Mont. Const. art. II, § 10 (establishing Montana citizens' general right of privacy); Mont. Const. art. II, § 11 (protecting Montana citizens from unreasonable searches and seizures). *See also State v. 1993 Chevrolet Pickup*, 2005 MT 180, ¶ 9, 328 Mont. 10, 116 P.3d 800 (discussing Montana's privacy protections).

¶15 Together, these constitutional provisions typically require that a "search" be conducted pursuant to a warrant based upon probable cause. *State v. Dickinson*, 2008 MT 159, ¶ 18, 343 Mont. 301, 184 P.3d 305. In Montana, "[a] search occurs when the government infringes upon an individual's expectation of privacy that society considers objectively reasonable. Where no objectively reasonable expectation of privacy exists, a 'search' does not occur within the contemplation of Article II, Section 11 of the Montana Constitution." *State v. Goetz*, 2008 MT 296, ¶ 25, 345 Mont. 421, 191 P.3d 489 (citing *State v. Hamilton*, 2003 MT 71, ¶ 17, 314 Mont. 507, 67 P.3d 871). In general,

7

"[s]ociety's recognition of the expectation of privacy as reasonable hinges on the unique facts of each situation." *City of Whitefish v. Large*, 2003 MT 322, ¶ 16, 318 Mont. 310, 80 P.3d 427.

¶16 Funkhouser's appeal correctly notes that the Montana Constitution provides its citizens with heightened privacy protections. Funkhouser further argues that these protections should be extended to suppress the evidence of methamphetamine discovered during Larson's warrantless field test of his syringe. However, under this Court's precedent, Montana's privacy protections do not take effect unless an unlawful "search" or "seizure" is first found. *See State v. Smith*, 2004 MT 234, ¶ 9, 322 Mont. 466, 97 P.3d 567. In his appeal, Funkhouser does not contest the legality of his syringe's seizure as part of a valid search incident to his arrest under § 46-5-102, MCA, which outlines the lawful scope of a search incident to arrest in Montana. Instead, Funkhouser's appeal only asserts that Larson's field test of the syringe's chemical contents was an unconstitutional "search" that violated his reasonable expectation of privacy, thus necessitating a warrant.

¶17 The distinction between a "seizure" and a "search" is significant to these proceedings. A "seizure" refers to the act of taking an object so as to deprive an individual of his or her property. *See State v. Lewis*, 2007 MT 295, ¶ 25, 340 Mont. 10, 171 P.3d 731 (citing the definition of "seizure" provided by *Horton v. California*, 496 U.S. 128, 133-34, 110 S. Ct. 2301, 2306 (1990)). A "search" generally refers to an act of observation that is invasive enough to intrude upon an expectation of privacy that society recognizes as reasonable. *See Horton*, 496 U.S. at 133; *see also Carpenter v. United States*, 585 U.S. ___, 138 S. Ct. 2206, 2213-16 (2018) (discussing the history and evolution of what constitutes

8

a "search").  Here, Funkhouser's failure to challenge the lawfulness of the seizure precludes any consideration by this Court of whether the syringe was lawfully seized pursuant to Funkhouser's arrest under § 46-5-102, MCA.  Accordingly, the only issue before this Court is whether a field test of the contents of the syringe, which was lawfully seized by police, constitutes a "search" within the meaning of the Fourth Amendment and Article II, Sections 10 and 11 of the Montana Constitution.

¶18    For purposes of our holding and analysis, we similarly must distinguish between the capabilities of a rudimentary chemical field test and the more comprehensive chemical testing conducted by the Montana State Crime Lab.  The record demonstrates that the field test conducted by Larson involved mixing the syringe's contents with a pre-prepared chemical concoction designed to turn blue upon coming into contact with methamphetamine.  This test is inherently limited in that it is only able to determine the presence of methamphetamine and nothing more.  On the other hand, the chemical testing conducted by the crime lab was significantly more comprehensive.  According to the record, the crime lab testing was able to reveal the presence of any chemical compound that was soluble in methanol; this includes the majority of controlled substances, as well as many non-controlled substances such as insulin.  It thus stands to reason that, from a privacy standpoint, the former of these two tests is significantly less invasive than the latter—a distinction that has previously been recognized by the United States Court of Appeals for the Ninth Circuit.[3]

---

[3] In *United States v. Mulder*, 808 F.2d 1346, 1348-49 (9th Cir. 1987), the Ninth Circuit held that a warrant was required to conduct comprehensive laboratory testing because "the chemical testing

¶19    With these distinctions made and based on the record before us, we now turn to the issue at hand: whether a field test for an illicit drug constitutes a search requiring law enforcement to first obtain a warrant. This Court has not previously held that a warrant is required in order for officers to conduct a rudimentary chemical field test of a substance that is already presumed to be lawfully seized—especially when that test's sole capability involves detecting the presence or non-presence of a single illicit drug. We decline to do so here. In reaching this conclusion, we are informed by the reasoning of the United States Supreme Court in *United States v. Jacobsen*, 466 U.S. 109, 104 S. Ct. 1652 (1984).

¶20    In *Jacobsen*, the Supreme Court definitively held that a chemical field test by law enforcement that only discloses the presence or absence of a single illicit drug—but no other "arguably 'private' fact"—was not a "search" requiring a warrant, as this type of chemical test "does not compromise any legitimate interest in privacy." *Jacobsen*, 466 U.S. at 123, 104 S. Ct. at 1661-62. *Jacobsen* involved the federal Drug Enforcement Administration's (DEA) use of a chemical field test to determine the presence of cocaine located within a zip-locked plastic bag. There, the Supreme Court reasoned that "[t]he field test at issue could disclose only one fact previously unknown to the agent—whether or not a suspicious white powder was cocaine. It could tell him nothing more, not even whether the substance was sugar or talcum powder." *Jacobsen*, 466 U.S. at 122, 104 S. Ct. at 1661. Additionally, in finding that no legitimate

---

in this case was not a field test which could merely disclose whether or not the substance was a particular substance, but was a series of tests designed to reveal the molecular structure of a substance and indicate precisely what it is."

privacy interest was compromised, the *Jacobsen* Court noted that Congress had decided, via the Controlled Substances Act, "to treat the interest in 'privately' possessing cocaine as illegitimate; thus[,] governmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest" that society would consider objectively reasonable. *Jacobsen*, 466 U.S. at 123, 104 S. Ct. at 1662. The *Jacobsen* Court also noted that law enforcement's interest in conducting these rudimentary field tests to better enforce drug laws was "substantial" when contrasted with the fact that no legitimate privacy interests were compromised. *Jacobsen*, 466 U.S at 125, 104 S. Ct. at 1663.

¶21 In the first of its two rationales for denying Funkhouser's motion to suppress, the District Court cited *Jacobsen* to rule that "a search warrant is not required for a law enforcement officer to field test a substance for illegal drugs." On these grounds, we affirm the District Court's denial and hold that the Supreme Court's rationale in *Jacobsen* applies to Larson's field test of Funkhouser's syringe. Larson's field test of the residue in Funkhouser's syringe—a test which the record establishes was only able to reveal the presence or absence of methamphetamine and no other "private fact"—is the exact test for which the Supreme Court in *Jacobsen* concluded there was no reasonable expectation of privacy violation. *Jacobsen*, 466 U.S. at 122-24, 104 S. Ct. at 1661-62. Moreover, like the cocaine in *Jacobsen*, a person's private possessory interest in methamphetamine has been declared illegitimate by both the United States Congress and the Montana Legislature. *See* Controlled Substances Act, 21 U.S.C. § 844a (imposing penalties for private possession); *see also* § 45-9-102, MCA (classifying methamphetamine's possession as a

11

criminal offense in Montana). This Court similarly reasons that no legitimate expectation of privacy was violated by Larson's field test on the contents of Funkhouser's syringe. While the Defendant certainly had a reasonable expectation of privacy in non-disclosure of a lawful drug (insulin) in the syringe, the field test, as in *Jacobsen*, could only reveal whether or not it was an illegal substance—not the identity of any particular legal substance. Consequently, we hold that Larson's chemical field test did not constitute a "search" under the Montana Constitution and Larson was not required to get a warrant before field testing the substance. Moreover, due to this Court's decision to affirm the District Court's denial of Funkhouser's suppression motion under *Jacobsen*, we will not address the District Court's secondary ruling denying Funkhouser's motion to suppress under the doctrine of inevitable discovery.

¶22 Funkhouser's appeal raises several arguments as to why this Court should avoid applying the clear language in *Jacobsen*; however, none are compelling enough to dissuade this Court. Most notably, Funkhouser's appeal identifies that this Court has held that the explicit right to privacy guaranteed by the Montana Constitution includes a right to privacy over the contents of one's personal medical information in *State v. Dolan*, 283 Mont. 245, 256, 940 P.2d 436, 442-43 (1997) (citing the Montana Constitution and § 50-16-502(1), MCA (which recognizes patients' right to privacy over their medical history) in order to suppress information unlawfully subpoenaed from the defendant's health care provider). However, this Court declines Funkhouser's invitation to extend this right of medical privacy to Larson's examination of the contents of Funkhouser's nearly empty syringe—especially when the field test in question could not have revealed any

12

sensitive medical information. In Funkhouser's case, the trial record is clear that Larson's chemical field test was only capable of returning a positive or negative result for the presence of a single, specific illegal substance: methamphetamine. As liquid methamphetamine is not a legally prescribed medication in Montana, the field test in question would not have been able to identify any information about the content of Funkhouser's lawful prescriptions. Thus, none of the "personal and sensitive" health care information that this Court contemplated as private in *Dolan* was revealed by Larson's test. *See Dolan*, 283 Mont. at 256, 940 P.2d at 442-43. As Funkhouser had no reasonable expectation of privacy violated by a test for the presence of methamphetamine in a syringe lawfully seized from his person, he cannot assert the constitutional protections afforded to a "search."

## CONCLUSION

¶23 This Court affirms the District Court's order denying Funkhouser's motion to suppress on the grounds that a rudimentary chemical field test of a lawfully seized substance is not a constitutionally protected "search" which requires a warrant. We remand to the District Court for the limited purpose of issuing an amended sentencing order which permits the sentences for Counts I through IV to run concurrently and which imposes only a single $10 charge for court information technology fees.

/S/ LAURIE McKINNON

13

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JIM RICE