No. DA 06-0097

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 60

STATE OF MONTANA,

   Plaintiff and Respondent,

 v.

BRYAN MALKUCH and JACKIE MALKUCH,
a/k/a JACKIE KERZMAN,

   Defendants and Appellants.

APPEAL FROM: District Court of the Sixteenth Judicial District,
       In and For the County of Fallon, Cause Nos. DC 2004-06 and DC 2004-07
       Honorable Joe L. Hegel, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     R. W. Heineman, Attorney at Law, Wibaux Montana

   For Respondent:

     Hon. Mike McGrath, Attorney General; John Paulson,
     Assistant Attorney General, Helena, Montana

     Albert R. Batterman, Fallon County Attorney, Baker, Montana

        Submitted on Briefs: December 13, 2006

          Decided: March 6, 2007

Filed:

           Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Bryan Malkuch and Jackie Malkuch appeal from orders of the Sixteenth Judicial District Court, Fallon County, denying their motions to suppress evidence. We affirm.

¶2 The dispositive issue on appeal is whether the District Court correctly determined that evidence was obtained as a result of a private search and thus appropriately denied the motions to suppress evidence obtained during and as a result of that search.

## BACKGROUND

¶3 At the time of the incidents described herein, Bryan Malkuch and Jackie Malkuch (the Malkuchs) were residents of Baker, Montana, and had two teenage children living with them, a sixteen-year-old son, D.M., and a thirteen-year-old daughter, J.M. In April of 2004, Jackie Malkuch called law enforcement officers to have D.M. removed from the family home following an argument. D.M. went to stay at Annie Thompson's home. Thompson, an adult, was a former babysitter and friend of the family.

¶4 A couple of days later, Thompson and D.M. approached a law enforcement officer, Michael Stanhope, outside a convenience store. Thompson told Officer Stanhope that Jackie was doing drugs, and asked if the police could do anything about it. Officer Stanhope told them the police would need evidence before they could do anything.

¶5 Although D.M. had been instructed not to return to the home, Thompson and D.M. left the convenience store and went to the Malkuch home. D.M. and Thompson went through a window into the house. They searched the house, including Jackie's bedroom, and found a

2

vial containing a white residue in Jackie's dresser drawer. Using a clean washcloth, they picked up the vial and returned to the convenience store about fifteen minutes after they left it. Officer Stanhope was still there and they gave him the vial, much to his surprise. Officer Stanhope delivered the vial to the Baker police station where the residue tested positive for methamphetamine.

¶6 The next morning, Chief Randy Ketterling of the Baker Police Department and Fallon County Sheriff Tim Barkley interviewed D.M. and Thompson. D.M. told the officers that his mother spent a lot of time in her bedroom and that she had recently lost a lot of weight. He told them where he found the vial and that he also saw a butane torch in the drawer. He also stated that Bryan had recently removed a bag full of items that D.M. believed contained drug paraphernalia, but that he could not locate the bag in the search of the house or garage.

¶7 Thompson told the officers that D.M.'s younger sister, J.M., had called her a couple months before and told her that she had seen Jackie snorting white powder with a straw off a white platter. Thompson stated that at her insistence, J.M. had then searched the house and found the empty platter with a razor blade nearby, as well as straws that were melted on one end. Thompson also stated that D.M. had told her he had found three homemade pipes in Jackie's bedroom. Thompson stated that she was concerned for the children's safety. When Chief Ketterling asked if Officer Stanhope asked her to search the dresser, she replied:

> [Thompson]: No. All he said is before they can ever do anything, they need evidence.
> Chief Ketterling: Evidence, ok,
> [Thompson]: Cause they just can't walk right in there…
> Chief Ketterling: Right.
> [Thompson]: and just say ok, we need this and that.

Chief Ketterling: So you guys decided to find, to get him some evidence basically?
[Thompson]: Yes.

¶8 Based on the vial containing methamphetamine and Thompson's and D.M.'s statements, the District Court issued a search warrant for the Malkuch residence. A drug task force officer executed the search warrant and found other drug paraphernalia in the house. The Malkuchs were charged with criminal possession of dangerous drugs, a felony, criminal possession of drug paraphernalia, and endangering the welfare of children, both misdemeanors.

¶9 The Malkuchs both filed motions to suppress the evidence of the methamphetamine in the vial because the officers obtained the vial without a warrant. They argued that the police officer directed Thompson and D.M. to search the house and bring him evidence, or at least that the officer cooperated with them in the search. They also argued that the application for the search warrant did not establish probable cause to believe drugs or drug paraphernalia were in the house because it was based on hearsay and stale information. The District Court denied their motions to suppress. The State dropped the child endangerment charge, and Bryan and Jackie pled nolo contendere to the drug charges and reserved their right to bring this appeal.

**STANDARD OF REVIEW**

¶10 The standard of review of a district court's denial of a motion to suppress evidence is whether the court's findings are clearly erroneous and whether the court's interpretation and application of the law are correct. This Court's review is plenary as to whether the district

4

court correctly interpreted and applied the law. *State v. Wetzel*, 2005 MT 154, ¶ 10, 327 Mont. 413, ¶ 10, 114 P.3d 269, ¶ 10 (citation omitted).

## DISCUSSION

¶11 **ISSUE: Did the District Court correctly deny a motion to suppress evidence obtained as a result of a private search?**

¶12 The federal and state constitutions protect Montana citizens from unreasonable searches and seizures. U. S. Const. Amend. IV; Mont. Const. art. II, § 11. The Montana Constitution provides a greater right of privacy than the United States Constitution, and therefore "provides broader protection than the Fourth Amendment in cases involving searches of private property." *State v. Elison*, 2000 MT 288, ¶ 46, 302 Mont. 228, ¶ 46, 14 P.3d 456, ¶ 46. However, the privacy section of the Montana Constitution applies to state action only. *State v. Long*, 216 Mont. 65, 71, 700 P.2d 153, 157 (1985). A search of a home conducted by private individuals does not violate a defendant's right of privacy. *Long*, 216 Mont. at 71, 700 P.2d at 157. Since a private search does not infringe a right of the defendant, a warrant is not required. Section 46-5-103, MCA.

¶13 In *Long*, this Court held that the exclusionary rule does not apply to private searches. *Long*, 216 Mont. at 71, 700 P.2d at 157. The purpose of the exclusionary rule is to "deter illegal police conduct and to preserve judicial integrity." *Long*, 216 Mont. at 71, 700 P.2d at 157. When private individuals act, they are likely unaware of the exclusionary rule and its application. Accordingly, the exclusionary rule does not serve to deter private individuals from engaging in searches that would be illegal if conducted by police. *Long*, 216 Mont. at

5

71, 700 P.2d at 157. Thus, the exclusionary rule "does not apply to evidence resulting from the conduct of private individuals, even if felonious, unless that conduct involves state action." *State v. Christensen*, 244 Mont. 312, 319, 797 P.2d 893, 897 (1990).

¶14 In determining whether a private person was acting as a government agent in conducting a search, two critical factors are examined: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends. *U.S. v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982) (citing *U.S. v. Walther*, 652 F.2d 788, 791-92 (9th Cir. 1981)).

¶15 The Malkuchs argue that the vial containing the methamphetamine was obtained illegally because Thompson and D.M. were working as agents of the police in searching the Malkuch home. They draw this conclusion from Thompson's statement that since Officer Stanhope told her the police needed evidence to do anything about Jackie's alleged drug use, she subsequently searched the house for evidence and brought it back to the officer. In response, the State points out the District Court's conclusion that there was insufficient state involvement to justify excluding the evidence. The District Court looked at the critical factors enumerated in *Miller*, and concluded that the police did not request Thompson and D.M. to do a search of the Malkuch home, nor were they aware that Thompson and D.M. were going to search the home. Thus, the police did not know of or acquiesce in the search until after it occurred.

¶16 With regard to the second factor, whether the party performing the search intended to assist law enforcement efforts or to further his own ends, the court found that Thompson and

6

D.M. carried out the search because Thompson was concerned for the welfare and safety of the children. At the time Thompson and D.M. conducted the search, the police had not made any effort to investigate the Malkuchs. *See Miller*, 688 F.2d at 658 (police officers invited private party to assist them in their ongoing investigative efforts). Even if D.M. and Thompson had intended to assist law enforcement efforts, they did not satisfy the first critical factor. The District Court correctly concluded that the search by Thompson and D.M. was a private search neither requested nor agreed to by the police, and therefore the evidence obtained was not subject to the exclusionary rule.

¶17　On appeal, the Malkuchs also argue that the testing of the vial without first obtaining a search warrant was an illegal search and seizure by the government. This argument was not presented to the District Court. This Court will not consider new issues or a change in legal theory for the first time on appeal, thus we decline to address this argument. *Wetzel*, ¶ 13.

¶18　The Malkuchs' final argument is that since the vial was obtained in an illegal search, and then relied upon to obtain the search warrant, the evidence obtained pursuant to the search warrant must be suppressed. However, because we have concluded that the vial was obtained in a private search not subject to the exclusionary rule, this argument has no merit.

¶19　The District Court's findings of fact were not clearly erroneous and it interpreted and applied the law correctly. Thus, we affirm the District Court's denial of the Malkuchs' motions to suppress evidence.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ JOHN WARNER