FILED

10/13/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0684

DA 19-0684

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 260

STATE OF MONTANA,

   Plaintiff and Appellee,

  v.

GAGE WOLFE,

   Defendant and Appellant.

APPEAL FROM: District Court of the Fifth Judicial District,
       In and For the County of Beaverhead, Cause No. DC-18-3838
       Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Shandor Badaruddin, Moriarity & Badaruddin, PLLC, Missoula, Montana

   For Appellee:

     Timothy C. Fox, Montana Attorney General, Roy Brown, Assistant
     Attorney General, Helena, Montana

     Jed C. Fitch, Beaverhead County Attorney, Russell Michaels, Deputy
     County Attorney, Dillon, Montana

          Submitted on Briefs: September 23, 2020

              Decided: October 13, 2020

Filed:

          _____
              Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Gage Wolfe appeals from a March 21, 2019 Fifth Judicial District Court order denying his motion to suppress testimony regarding statements he made during a phone conversation with the victim. We affirm.

¶2    We address the following issue on appeal:

*Whether the testimony of A.O. and Tricia as to the contents of the conversation with Wolfe must be excluded as attributable to an unconstitutional privacy intrusion by a government actor.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3    On June 1, 2018, A.O. and her friend Tricia went to the Dillon Police Department and alleged that defendant Gage Wolfe (Wolfe) had committed sexual offenses against A.O. Officers Alvarez and Ternes conducted the victim interview, which was recorded by body camera. A.O.'s phone was ringing as the officers entered the interview room. Tricia explained that the caller was Wolfe, who had apparently been "admitting . . . over the phone" to the sexual conduct. An officer responded, "Whoa maybe we should, let's just start from the beginning." A.O. explained that she and Wolfe had broken up a year prior and were trying to remain friends. A.O. related Wolfe had spent some nights at A.O.'s residence while helping her move and that A.O. had spent a night at Wolfe's residence while picking up an item she had left there. A.O. alleged that, during these nights, she had awoken six to eight times to Wolfe kissing her, penetrating her vagina with his finger, and touching her breasts and buttocks.

2

¶4     Tricia and A.O. told the officers that Wolfe had recently attempted to call A.O. multiple times and had been sending text messages. A.O. allowed Officer Ternes to look through the messages, which the officer concluded "get[] to a point where [Wolfe] doesn't deny doing it." While reading the text messages, Officer Ternes noted that Wolfe had called "5 [or] 6 times since we've been sittin[g] here" and he swiped the phone to ignore another incoming call from Wolfe. The following exchange then occurred:

> Officer Ternes: Sounds good. What I need you to do. Um, it might take a while. If you can email me these messages. Um, and then, the next time he calls, um, maybe answer it. Let me talk to my partner first and see if that's ok. On one of these times and maybe we'll get him to answer it. Then just have a conversation. Don't let him know you're here with us. And see what you can, you know, allow him to talk ok. I will talk to [my partner] real quick, I'll see if that's, if we're ok with that. I think from these messages here I probably have enough there. This is definitely.
>
> What the law states is it's under sexual intercourse without consent, now there's different degrees under that charge. As far as things that happened, anything that is penetration falls higher into that, ok. Um, this is a, this will be a felony issue. This is, it's not ok.
>
> Um. Is it ok for her, if he calls again, to have a conversation with him like we're not here?
>
> Officer Alvarez: If she wants.
>
> Officer Ternes: If that's ok with you. If you want to do that. Like I said, there [are] some things in the messages, where he doesn't just straight come out and say that "yeah, I did this."
>
> [phone rings]
>
> Officer Ternes: If you want to. If you don't that's ok.
>
> A.O.: I'm good.
>
> [A.O. answers on speakerphone ]
>
> A.O.: Hello?

3

Wolfe: Hello? Hello?

A.O.: I'm here.

Wolfe:  [Deep sigh]  I don't know [A.O.].  I don't know what to do I know sorry isn't enough.  But that's all I know how to say.  Yeah I admit to it.  I did it.  I don't know why.  It was stupid of me.  But.  Can I?

A.O.: What did you do?

Wolfe: I raped you.

A.O.: Do you know how many times you did it?

Wolfe: Once.

A.O.: Did you know it's actually 6 to 8 times.

Wolfe: How?

A.O.: Every time I was half asleep I could not consent.

Wolfe: I never did it any other time except that one time.

A.O.: Yes you did.

Wolfe: No I didn't.

A.O.: Yes you did [Wolfe], I remember.

Wolfe: Fine I raped you multiple times.  Call the cops on me.  Then I'll get what I deserve.  I know sorry ain't gonna cut it, but I am sorry [A.O.].

The officers had not obtained a search warrant prior to the conversation.

¶5     Wolfe moved to suppress the evidence under Article II, Sections 10 and 11, of the Montana Constitution.  After a hearing, the District Court ruled that the recordings and officer testimony regarding the conversation would be excluded, but that A.O. and Tricia, as private actors, could testify as to the conversation.  This appeal followed.

4

## STANDARD OF REVIEW

¶6     We review a denial of a motion to suppress to determine whether the district court's findings of fact were clearly erroneous and whether its interpretation and application of the law was correct. *State v. Allen*, 2010 MT 214, ¶ 21, 357 Mont. 495, 241 P.3d 1045.

## DISCUSSION

¶7     On appeal, Wolfe contends that the District Court erred in suppressing only the police testimony and recordings of Wolfe's self-incriminating statements, while allowing A.O. and Tricia to testify as to the same statements. He argues that A.O. and Tricia acted as state agents during the conversation with Wolfe or, alternatively, that their testimony regarding the conversation constitutes Fruit of the Poisonous Tree.

¶8     *Issue: Whether the testimony of A.O. and Tricia as to the contents of the conversation with Wolfe must be excluded as attributable to an unconstitutional privacy intrusion by a government actor.*

¶9     The Montana Constitution guarantees that the "people shall be secure in their persons, papers, homes, and effects from unreasonable searches and seizures" such that "[n]o warrant . . . shall issue . . . without probable cause" and provides that the "right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Mont. Const. art. II, §§ 10-11. Together, these provisions offer robust protection from government intrusions. *Allen*, ¶ 47 (citing *State v. Goetz*, 2008 MT 296, ¶ 14, 345 Mont. 421, 191 P.3d 489).

¶10     Like other constitutional guarantees of individual liberties, these provisions direct government action only. The United States Supreme Court has long recognized that Fourth Amendment "protection applies to governmental action. Its origin and history clearly show

5

that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies . . . ." *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S. Ct. 574, 576 (1921). In *State v. Long*, this Court abandoned its short-lived view of the Montana Constitution as unique from its federal and sister-state counterparts in also forbidding *private* parties from engaging in unreasonable searches and seizures. *State v. Long*, 216 Mont. 65, 69, 700 P.2d 153, 156 (1985) (overruling *State v. Hyem*, 193 Mont. 51, 58, 630 P.2d 202, 206 (1981)).[1] While there may be many reasons why non-governmental actors should not invade one another's privacy, the Montana Constitution is not one of them.

¶11 A privacy violation exists where the subject of the intrusion holds an objectively reasonable expectation of privacy and where the State's intrusion is not justified by a compelling government interest or taken with sufficient procedural safeguards, such as a properly issued search warrant or other special circumstances. *Allen*, ¶ 47 (citing *Goetz*, ¶ 27). The exclusionary rule vindicates these constitutional privacy rights by suppressing unlawfully obtained evidence in judicial proceedings. *State v. Lara*, 179 Mont. 201, 204, 587 P.2d 930, 932 (1978) (evidence resulting from constitutional violation "must be deemed inadmissible as it was tainted by the primary illegality." (citations omitted)); *see also* § 46-13-302(1), MCA ("A defendant aggrieved by an unlawful search and seizure

---

[1] The reference to "warrant[s]" and "compelling state interest[s]" in the text of Article II, Sections 10 and 11, of the Montana Constitution further demonstrate that these provisions restrain only government action.

may move the court to suppress as evidence anything obtained by the unlawful search and seizure.").

¶12 The State concedes that Wolfe had a reasonable privacy expectation that his cell phone conversation was not being monitored and recorded by government agents, such that exclusion of Officers Ternes' and Alvarez's testimony and recordings was appropriate. However, to prevent Tricia and A.O. from testifying as to what they heard, Wolfe must show that their actions are attributable to the government or that their proffered testimony was a result of government misconduct. Neither showing is made here.

¶13 Wolfe contends that A.O. and Tricia were acting at the behest of law enforcement when they heard Wolfe's incriminating statements, to the point where their actions should be ascribed to the government and subject to constitutional restraints. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614, 109 S. Ct. 1402, 1411 (1989) ("Although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government." (citations omitted)). However, the record here demonstrates that Officers Ternes and Alvarez never directed A.O. or Tricia's actions to such a degree as to conclude that they had become instruments of the State. The officers' mere suggestion and comment that A.O. was free to answer her phone—"[i]f you want to. If you don't that's ok"—does not evince coercion or inducement that might give rise to questions of government control. A.O. was not in police custody or negotiating for a deal. Here, A.O.'s conversation with Wolfe within the police station does

not appear any more attributable to the government of Montana than that which might have occurred if she had chosen to answer one of his earlier calls on her way to the station.

¶14 Furthermore, A.O.'s actions do not support a conclusion that she had taken on the role of a government investigator. A.O. did not solicit the call with Wolfe; rather, Wolfe repeatedly called her. Wolfe, unprompted, began the phone conversation with an admission: "Yeah I admit to it. I did it." As the District Court noted, A.O.'s brief questioning of Wolfe was not highly scripted, intensive, or leading. A.O. was not using government equipment or information. A.O. and Tricia were not government informants and they were not participants in an ongoing investigation. In short, A.O. and Tricia acted as citizens reporting a crime, not as government agents investigating one. The Montana Constitution does not preclude A.O. and Tricia, as private citizens, from intruding upon Wolfe's privacy[2] or from testifying as to what they learned as a result.

¶15 Wolfe argues that, even if A.O. and Tricia were not acting as government agents, their testimony should be excluded under the Fruits of the Poisonous Tree doctrine, as it does not fall within any of the doctrine's recognized exceptions, such as attenuation, independent source, or inevitable discovery. Wolfe must first show that the evidence he wishes to exclude is traceable to a constitutional violation. The officers' suggestion that A.O. answer her phone, her subsequent decision to do so, and the resulting conversation

---

[2] Furthermore, Wolfe had no reasonable expectation of privacy that A.O. would not repeat what he told her. *See Goetz*, ¶ 35 ("Montanans are willing to risk that a person with whom they are conversing in their home or other private setting may repeat that conversation"). Because neither A.O. nor Tricia were government actors, we need not address whether Wolfe had a reasonable expectation of privacy that Tricia, as a third party, would not be listening to his cell phone conversation with A.O.

8

itself were not unconstitutional. A.O.'s and Tricia's testimony originated from A.O.'s lawful conversation with Wolfe, not the officers' unlawful monitoring and recording of that conversation. The evidence Wolfe wishes to exclude is not a result of the constitutional violation at hand. Therefore, A.O. and Tricia's testimony is not subject to exclusion.

**CONCLUSION**

¶16 Because A.O. and Tricia's testimony resulted from their own private actions, not from the unconstitutional monitoring and recording by police, the District Court was correct in declining to suppress it.

¶17 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE