No. 05-693

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 11

STATE OF MONTANA,

Plaintiff and Appellant,

v.

PRESTON A. MADPLUME,

Defendant and Respondent.

APPEAL FROM:     The District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 2004-108,
Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Hon. Mike McGrath, Montana Attorney General, John Paulson,
Assistant Attorney General, Helena, Montana

Robert J. Long, Lake County Attorney, Polson, Montana

For Respondent:

Lane K. Bennett, Attorney at Law, Kalispell, Montana

Submitted on Briefs:  July 12, 2006

Decided:  January 23, 2007

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 On October 1, 2004, Preston A. Madplume (Madplume) was arrested and then detained at the Tribal Police Office in Pablo on misdemeanor charges arising from an incident that had occurred the previous evening. While Madplume was being detained, a minor female alleged that he had sexually assaulted her during the previous evening as well. The officers at the jail awakened Madplume and, without a warrant, swabbed his hands and fingers for DNA evidence. The lab results ultimately revealed the presence of the young woman's DNA on Madplume's finger. Madplume was charged with sexual intercourse without consent. He moved to suppress the evidence obtained by the search on the ground that it was a warrantless and therefore unlawful search of his person. The District Court granted his motion. The State appeals. We reverse and remand.

## ISSUE

¶2 The question presented is whether the District Court properly granted Madplume's motion to suppress evidence of the victim's DNA obtained from the warrantless swabbing of Madplume's hands.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In late September 2004, Madplume, then eighteen years old, visited the home of a fifteen-year old female acquaintance, M.F. The two smoked marijuana and drank alcohol. At some time during the evening, Madplume and M.F. got into an argument. Madplume allegedly destroyed some property and refused to leave. Subsequently, however, he fell asleep. At that time M.F. called her mother who in turn called the police. The Tribal Police arrested Madplume on misdemeanor charges of trespass,

2

criminal mischief and supplying alcohol to a minor, and transported him to the drunk tank at the Tribal Police Office in Pablo. The drunk tank did not have a sink, a toilet or water.

¶4 Meanwhile, M.F. told a victim's advocate that Madplume had touched her breasts and had put his finger in her vagina. The advocate conveyed M.F.'s statements to the police. The police awakened Madplume and swabbed his hands and fingers for DNA evidence. It is undisputed that Madplume did not consent to the search nor did the officers obtain a search warrant. The search indicated that M.F.'s DNA was present on Madplume's right, middle finger.

¶5 In September 2005, after he was charged with sexual intercourse without consent, Madplume moved to suppress this evidence on the ground that there was a warrantless and unlawful search. The District Court held a hearing on the motion on October 26, 2005. On November 8, the District Court, relying on *State v. Hardaway*, 2001 MT 252, 307 Mont. 139, 36 P.3d 900, granted Madplume's motion to suppress. The State filed a timely appeal.

## STANDARD OF REVIEW

¶6 We review a district court's grant of a motion to suppress "to determine whether the court's findings of fact are clearly erroneous and whether its interpretation and application of the law are correct." *State v. Palmer*, 2003 MT 129, ¶ 6, 316 Mont. 46, ¶ 6, 68 P.3d 809, ¶ 6 (citation omitted).

3

## DISCUSSION

¶7    The District Court adopted the proposed findings of fact submitted by both parties and incorporated the findings into its Order. As a result, the findings are undisputed. The court then concluded that, under *Hardaway*, a warrant was required to swab Madplume's hands. It noted that the forensic expert had testified that if the victim's DNA was not washed off or rubbed off, it would have remained on Madplume's skin for approximately twenty-four hours. The court continued that because Madplume was in police custody and under arrest in a jail without a sink, toilet or water, Madplume had no "present means of destroying the DNA evidence, and it was not going to evaporate on its own within any time frame during which an application could be made to secure a search warrant."

¶8    The State argues that the evidence of M.F.'s DNA on Madplume's finger was transient, evanescent, and highly destructible. It asserts that any efforts the officers could have undertaken to preserve the evidence pending the issuance of a search warrant would have been ineffective and that prompt action was necessary to prevent the loss of the evidence. The State further claims that the District Court failed to consider the totality of the circumstances when it concluded that the situation was not sufficiently exigent to justify a warrantless swabbing of Madplume's hands. Lastly, the State maintains that the District Court misinterpreted and misapplied our holding in *Hardaway*.

¶9    Madplume counters that his case is "incredibly similar" to *Hardaway*, and that the court correctly interpreted and applied *Hardaway* when it granted Madplume's motion to suppress. He also avers that because he was unaware of the charges or the potential

4

existence of DNA evidence on his hands and that he was asleep at the time, the police had the opportunity and the responsibility to obtain a warrant. Since both parties rely on *Hardaway* to support their respective positions, we turn to the case for illumination.

¶10 In *Hardaway*, Hardaway broke into a garage and in so doing cut his hand with the broken window glass. As a result of the cuts, he left bloody finger and hand prints around the garage. He subsequently entered the home from a garage entrance. The homeowner, whom he had awakened while rummaging in the garage, confronted him and turned on the light at which time Hardaway fled the house through a garage exit. The homeowner called the police, who responded immediately. She provided a description of Hardaway. One of the officers stayed at the residence and the other began looking for Hardaway. When the officer found Hardaway, who matched the description provided by the homeowner, near the home, he asked to see Hardaway's hands. Hardaway's hands were bloody and had what appeared to be fresh cuts. The officer arrested Hardaway and transported him to the detention facility. Subsequently, without consent or a warrant, the police swabbed Hardaway's hands. Lab tests revealed that the blood on Hardaway's hands was his blood and that it matched the blood on the broken window and the finger/hand prints at the homeowner's garage. Hardaway moved to suppress the evidence on the ground that it was a warrantless search. The district court refused and a jury convicted Hardaway. *Hardaway*, ¶¶ 3-9.

¶11 On appeal we reversed, holding that the swabbing of Hardaway's hands constituted a search subject to the protections of the federal and the Montana

5

constitutions. *Hardaway*, ¶ 23[1]. We also held that the warrantless search "was not conducted in accordance with the rationale permitting a warrantless search incident to a lawful arrest" under § 46-5-102, MCA, as argued by the State. *Hardaway*, ¶ 58. We explained that an underlying purpose of allowing warrantless searches under § 46-5-102, MCA, was to prevent an arrestee from "destroying incriminating evidence in his or her possession. We have applied this statute so as to allow searches where exigent circumstances call for them . . . . Exigent circumstances are those circumstances that would cause a reasonable person to believe that prompt action was necessary to prevent . . . the destruction of relevant evidence . . . ." *Hardaway*, ¶ 40 (citations omitted).

¶12 Importantly, we observed in *Hardaway* that the officers knew the homeowner had not been accosted; therefore "the police knew that the blood they swabbed and sent in for analysis was Hardaway's blood, and not the blood of a victim that could be washed away unless taken at once. Had the goal been simply to preserve evidence that there was blood on Hardaway's hands, that was accomplished by the photographs taken of his hands while in custody. In the alternative, the officers could have bagged Hardaway's hands and kept him under surveillance until obtaining a valid search warrant." *Hardaway*, ¶ 58.

¶13 Herein lies the critical distinction between *Hardaway* and the case before us. A warrantless search of Hardaway's hands was not necessary, as there was no exigency. The swabbed evidence in *Hardaway* was Hardaway's own blood, and the officers knew

---

[1] Notably, Hardaway's conviction was reversed on two separate and independent grounds: the warrantless search and the faulty manner in which he was charged by the State, which was in turn compounded by the failure of the district court to properly instruct the jury as to the requirement of unanimity in its verdict. *Hardaway*, ¶¶ 71-72.

it. There was no danger that Hardaway would destroy evidence necessary to establish the crime, because the blood evidence could be obtained from Hardaway at any time, once a warrant had been secured. Given the absence of any exigency, there was no basis under the statute for conducting a warrantless search. This being the case, a warrant was necessary. In this case, by contrast, the evidence sought was not a sample of Madplume's always-available DNA, but the DNA of his victim. The forensic expert also testified that Madplume could have destroyed this evidence by licking his fingers, rubbing them against a wall or some other surface, or simply perspiring; therefore, the exigent circumstances needed to justify a warrantless search clearly existed.

¶14 The District Court relied on language in *Hardaway* in which we stated that any claimed exigency was nullified because Hardaway was in custody at the police station, was under the full control of the police, and had no present means of destroying the blood evidence that was not going to evaporate on its own. While these circumstances are indeed similar to those in Madplume's case, as discussed above, the critical distinction is the source of the DNA evidence.

¶15 Once officers were informed of the sexual assault allegation, it became imperative to prevent Madplume from destroying any evidence that may have proved the crime. Unlike in *Hardaway*, the victim's evidence on Madplume's hands had not been memorialized through photographs because it was invisible. Additionally, even if Hardaway could have rubbed away the quantity of blood on his hands while under police supervision, the critical evidence could easily be obtained again. Not so in Madplume's case. Madplume could have compromised the delicate evidence as he slept, or could

7

have wiped it away in an instant, even while under police supervision.  Once lost, this sole physical evidence of the crime could never be duplicated.  This factual distinction completely distinguishes this case from *Hardaway*, and is determinative of our conclusion that the District Court erred in its application of *Hardaway* to the case presented here.

## CONCLUSION

¶16    For the foregoing reasons, we reverse and remand this matter to the District Court for further proceedings in accordance with this Opinion.


/S/ PATRICIA COTTER


We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART

Justice Jim Rice, concurring.

¶17    I concur with the Court's decision herein, and disagree only with its statements that there was not a similar exigency in *Hardaway* which likewise justified the warrantless search in that case.

/S/ JIM RICE


Justice John Warner, concurring.

¶18    I concur with the Court's decision herein.  I agree with Justice Rice's dissent in *Hardaway*.  Therefore, along with Justice Rice, I disagree with the Court's statements in this case that an exigency did not exist in *Hardaway*.


/S/ JOHN WARNER