FILED

08/15/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0579

DA 21-0579

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 154

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KEITH PRICE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                  In and For the County of Gallatin, Cause No. DC 20-234
                  Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

           Ryan Aikin, Aikin Law Office, PLLC, Missoula, Montana

        For Appellee:

           Austin Knudsen, Montana Attorney General, Bjorn E. Boyer, Assistant
           Attorney General, Helena, Montana

           Audrey S. Cromwell, Gallatin County Attorney, Erin Murphy, Deputy
           County Attorney, Bozeman, Montana

                        Submitted on Briefs:  June 28, 2023

                                  Decided:  August 15, 2023

Filed:

                                  _____
                                      Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Defendant and Appellant Keith Alan Price (Price) appeals from the Findings of Fact and Conclusions of Law and Order issued by the Eighteenth Judicial District Court, Gallatin County, on September 17, 2021, denying Price's Motion to Suppress and Dismiss. We reverse.

¶2 We state the issue on appeal as follows:

*Did the District Court commit reversible error in denying Price's Motion to Suppress and Dismiss?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On June 9, 2020, Price was charged by Information with one count of Criminal Possession of Dangerous Drugs with Intent to Distribute and one count of Possession of Property Subject to Criminal Forfeiture, both felonies. Price filed a Motion to Suppress and Dismiss, asserting "his arrest was unlawful and that the subsequent search of his vehicle was unlawful" such that the evidence discovered in the vehicle—$2,000 cash and methamphetamine—should be suppressed. While the District Court denied Price's motion, concluding Probation and Parole Officer Jared Poole (Poole) had "reasonable suspicion to authorize a probation search" of Price's vehicle, it did not address Price's contention that his arrest prior to the search was unlawful and that all the evidence obtained after his arrest was obtained as a result of the unlawful arrest and, as such, subject to suppression. After the denial of his suppression motion, Price entered into a plea agreement with the State. Pursuant to the plea agreement, the State amended the charges to one count of Criminal Possession of Dangerous Drugs, to which Price pled guilty and reserved his right to appeal

2

the denial of his suppression motion. Ultimately, Price was sentenced to a five-year commitment to the Montana Department of Corrections (DOC). He now appeals from the District Court's denial of his Motion to Suppress and Dismiss.

**The Suppression Hearing.**

¶4 Hearing on Price's suppression motion was held September 3, 2020. At that hearing, the State called Deputy Alberto Tapia (Tapia), Deputy Brian Taylor (Taylor), and Poole as witnesses.

¶5 **Testimony of Gallatin County Sheriff's Deputy Alberto Tapia**. Tapia testified he was on patrol the evening of May 31, 2020. While on patrol northbound on North 19th St. near the intersection of North 19th St. and the I-90 onramp,[1] he noticed a Chevy Blazer stopped in the intersection. Tapia initiated a traffic stop.[2] Tapia identified Price as the driver of the vehicle and informed him he was stopped in an intersection and that was a traffic violation. Tapia requested Price's driver's license, registration, and proof of insurance. Price produced his driver's license and registration but was unable to provide proof of insurance, reporting to Tapia that he was not currently working and could not afford it. Tapia also discussed with Price where he was going and why he committed the traffic violation. Price explained that he was initially going to turn onto the westbound onramp of I-90 but his passenger, Brandon Easterbrooks, told him to continue on 19th

---

[1] At this intersection vehicles turn west to get on the I-90 onramp.

[2] At the time Tapia initiated the traffic stop, Taylor was in his patrol car behind Tapia's vehicle. Taylor served as the cover officer.

Street and go to the Blue Basket gas station so he could use the restroom. Tapia returned to his patrol vehicle and provided Price's information to dispatch. Dispatch informed Tapia that Price was on probation. Tapia informed Taylor, who was talking with Easterbrooks, that Price was on probation and also related his discussion with Price as to where they were going and why Price committed the traffic violation. Tapia testified that Taylor then contacted Probation and Parole and confirmed that Easterbrooks was also on probation. Tapia did not have any direct contact with the on-call probation Officer Poole during the encounter with Price and Easterbrooks that evening.

¶6 **Testimony of Gallatin County Sheriff's Deputy Brian Taylor.** Taylor testified he was on patrol on North 19th St. the evening of May 31, 2020, at approximately 10:16 p.m. when Tapia, in his own patrol vehicle ahead of him, initiated a traffic stop of a parked Trailblazer vehicle in the middle of the intersection on 19th and the I-90 onramp.[3] Taylor served as the cover officer. He spoke to Easterbrooks, collected his information, and provided it to dispatch. Dispatch informed that Easterbrooks was likewise on probation. As such, he called the on-call Probation and Parole officer, Poole. He informed Poole there "[were] conflicting stories on what Mr. Price and Easterbrooks were providing to Tapia and I, and that they're both in the vehicle together."[4] Upon providing this information to

---

[3] Other than this non-jailable traffic violation, Taylor did not observe any other violation or criminal conduct. Ultimately, Price was not cited for the non-jailable traffic offense.

[4] Both Tapia and Taylor testified Price and Easterbrooks's accounts for where they were going and why Price committed the traffic violation were inconsistent. Neither testified as to how their accounts differed.

Poole, Poole requested Taylor to get a PBT sample from both Price and Easterbrooks. He did so and the results of both tests were "[z]eros"—indicating "[t]here's no alcohol detected." Taylor then again called Poole and related the negative test results to Poole. Poole then instructed Taylor to detain Price and Easterbrooks—to place them "under arrest pending a urinalysis." Taylor related Poole's direction to Tapia. Taylor placed Easterbrooks in handcuffs and put him in the back of his patrol car and Tapia arrested Price "for a probation hold" and put him in his patrol car. After Price was arrested and placed in Tapia's patrol car, Taylor asked Price if he wanted him to retrieve his cellphone and wallet from Price's vehicle. Price responded that he did and he also requested Taylor retrieve cash from his sun visor. Taylor did so and found $2,000 cash. After retrieving the cash, Taylor again contacted Poole and advised him of the cash. Poole then authorized a search of the vehicle.

¶7 **Testimony of Probation & Parole Officer Jared Poole.** Poole testified that on May 31, 2020, he was on duty as the on-call probation officer. He received a call from Taylor regarding Price and Easterbrooks. In the initial call Taylor "informed me that he had pulled over the Defendant and Brandon Easterbrook[s]. And what I recall, Mr. [Price] was driving. The reason for the pullover was because they were straddling a dividing line between the turn lane to go onto the interstate on the 19th Street bridge, and the lane to go forward."[5] Poole instructed Taylor to get breath samples from Price and Easterbrooks and

---

[5] At no time did Poole assert the non-jailable traffic stop provided any basis for Price's detainment.

5

while he did that, Poole reviewed their cases further. Taylor called him a second time to report the breath samples were negative. "He also told me that both [Price] and Brandon Easterbrook[s] gave conflicting stories of what they were doing and where they were going." Based on this and Easterbrooks recently being arrested and Price recently being released from prison, it "was decided to place investigative holds" on them to get drug tests.

> Q. And by an investigative hold, what do you mean by that?

> A. Seventy-two [hour] hold to give us the opportunity to address or to look into any possible violations.

After effectuating the arrest of Price and Easterbrooks, Taylor called Poole a third time and informed Poole that Price had asked him to retrieve cash from the vehicle, he had done so, and it was around $2,000. Poole then authorized a search of the vehicle. Prior to instructing Taylor to arrest Price and Easterbrooks on "investigative holds" and authorizing the vehicle search, Poole was not aware Price did not have insurance covering his vehicle.

¶8 Additional facts will be discussed as necessary below.

**STANDARDS OF REVIEW**

¶9 The parties do not dispute the standard of review applicable to this matter. We review denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Larson*, 2022 MT 223, ¶ 13, 410 Mont. 424, 519 P.3d 1243; *State v. Madplume*, 2007 MT 11, ¶ 6, 335 Mont. 290, 150 P.3d 956. Findings of fact are clearly erroneous if not supported by substantial

6

evidence or the court misapprehends the effect of the evidence or review of the record convinces us that a mistake has been made. *Larson*, ¶ 13.

## DISCUSSION

¶10 *Did the District Court commit reversible error in denying Price's Motion to Suppress and Dismiss?*

¶11 Price asserts Poole's authorization to arrest him was not based on Poole's judgment that Price violated the conditions of his supervision, but rather was an illegal "investigative hold" to "look into any possible violations" which has no support under Montana law. The State contends Poole had authority to deputize Tapia to arrest Price based on his judgment that Price violated the conditions of his parole.

¶12 Initially, Price asserted § 46-23-1012(2), MCA, which permits a probation and parole officer to authorize the arrest of a *probationer* believed to have violated the conditions of his or her probation, to be applicable. Upon the State clarifying that Price was a *parolee*, not a probationer, Price agrees § 46-23-1023(2), MCA, which uses identical language for the arrest of a *parolee* as found in § 46-23-1012(2), MCA, is applicable in this case.[6]

¶13 In pertinent part, § 46-23-1023, MCA, provides:

(1) At any time during release on parole or conditional release, the department may issue a warrant for the arrest of the parolee for

---

[6] Section 46-23-1012(2), MCA, provides any probation or parole officer may arrest a *probationer* without a warrant if the *probationer* has, "in the judgment of the probation and parole officer, violated the conditions of probation." Section 46-23-1023(2), MCA, provides identically for a warrantless arrest of a *parolee*—any probation or parole officer may arrest a *parolee* without a warrant if the *parolee* has, "in the judgment of the probation and parole officer, violated the conditions of the parolee's release."

7

violation of any of the conditions of release or a notice to appear to answer to a charge of violation.  The notice must be served personally upon the parolee.  The warrant must authorize all officers named in the warrant to return the parolee to the actual custody of the penal institution from which the parolee was released or to any other suitable detention facility designated by the department.

(2) Any probation and parole officer may *arrest the parolee without a warrant* or may deputize any other officer with power to arrest to do so by giving the officer oral authorization and within 12 hours delivering to the place of detention a written statement setting forth that the parolee has, *in the judgment of the probation and parole officer, violated the conditions of the parolee's release.*  A written statement or oral authorization delivered with the parolee by the arresting officer to the official in charge of the institution from which the parolee was released or other place of detention is sufficient warrant for the detention of the parolee or conditional releasee if the probation and parole officer delivers a written statement within 12 hours of the arrest. The probation and parole officer, after making an arrest, shall present to the detaining authorities a similar statement of the circumstances of violation.

Section 46-23-1023(1-2), MCA (emphasis added).  Price argues the objective evidentiary

standard required for warrantless arrest of a parolee is probable cause.[7]  However, Price

---

[7] Price asserts, under § 46-23-1023(1), MCA, when the DOC seeks to address an asserted parole violation, it may either issue a warrant or a notice to appear.  Both the U.S. Constitution and the Montana Constitution provide, without any exception for administrative warrants for the arrest of parolees, that "[n]o warrant to . . . seize any person . . . shall issue . . . without probable cause[.]" Mont. Const. art. II, § 11; *see also* U.S. Const. amend. IV.  A warrant issued pursuant to § 46-23-1023(1), MCA, must be supported by probable cause.  If the parolee is arrested, pursuant to § 46-23-1024(2), MCA, there must be a hearing "to determine whether there is probable cause or reasonable grounds to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions."  To harmoniously apply both the constitutional and statutory provisions "reasonable belief" must be considered to be synonymous with "probable cause."  This Court employed such an interpretation in *State v. Updegraff*, 2011 MT 321, ¶ 60, 363 Mont. 123, 267 P.3d 28 ("Probable cause to arrest is established if the facts and circumstances . . . are sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense."), as has the Ninth Circuit Court of Appeals in *United States v. Gorman*, 314 F.3d 1105, 1115 (9th Cir. 2002) ("reasonable belief" standard required for police to enter a residence to serve

also asserts we need not determine what, if any, objective evidentiary standard applies as the lesser subjective standard set forth in § 46-23-1023(2), MCA, was not satisfied. We agree with Price in this regard.

¶14 At the time Poole deputized Taylor and Tapia to effectuate the warrantless arrest of Price, Poole knew a traffic stop was initiated as Price's vehicle was "straddling a dividing line between the turn lane to go onto the interstate on the 19th Street bridge, and the lane to go forward[,]" Price had recently been released from prison, Price was with Easterbrooks who was on probation and pending revocation, Price and Easterbrooks' alcohol breath tests were negative, and Price and Easterbrooks' accounts of where they were going and what they were doing were inconsistent. Poole instructed the officers to arrest Price and Easterbrooks and place "investigative holds" so Probation and Parole could have the

---

an arrest warrant "should be read to entail the same protection and reasonableness inherent in probable cause.").

Section 46-23-1023(2), MCA, unlike subsection (1), provides no objective evidentiary standard, but rather refers only to the "judgment of the [] parole officer." In his brief, Price asserts "there must be some objective standard, for if 'subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate[.]' *Beck v. Ohio*, 379 U.S. 89, 97, 85 S. Ct. 223, 229 [] (1964)," and asserts that objective standard to be "probable cause." In harmonizing constitutional provisions with § 46-23-1023(2), MCA, Price contends the most natural interpretation of the statute "is that a probation or parole officer authorizing a warrantless arrest of a parolee is bound to follow the same standard as would a judge reviewing the officer's warrant application had they instead followed the procedure of subsection (1)." Finally, Price asserts that while the U.S. Supreme Court has approved "reasonable suspicion"—a less stringent standard— for brief governmental intrusions short of arrest, it has never permitted arrest—even of a probationer or parolee—absent probable cause. Thus, Price asserts the objective standard of probable cause, rather than the subjective standard of "judgment of the [] parole officer" should be employed when making a warrantless arrest of a parolee. As indicated above, we need not address this assertion as Price's warrantless arrest did not even meet the articulated subjective standard set forth in § 46-23-1023(2), MCA.

opportunity "to look into any possible violations." At that time, Poole did not know of any parole violation or express any judgment based on reliable information within his possession that Price had violated the conditions of his release. Thus, pursuant to the requirements of § 46-23-1023(2), MCA, the warrantless arrest of Price was illegal.[8]

¶15     Pursuant to the exclusionary rule, evidence discovered as a direct or indirect result of an unlawful search, is generally inadmissible against the accused in subsequent proceedings. *State v. Laster*, 2021 MT 269, ¶ 35, 406 Mont. 60, 497 P.3d 224. Here, Poole subjected Price to an unlawful seizure when he authorized and instructed Taylor and Tapia to arrest Price for investigative purposes. The arrest was illegal and led directly to the discovery of incriminating evidence—$2,000 cash and methamphetamine. As such, it was error for the District Court not to suppress and exclude this evidence. Accordingly, we reverse and remand this matter to the District Court to grant Price's Motion to Suppress and Dismiss.

## CONCLUSION

¶16     Price's warrantless arrest was unlawful. We reverse and remand to the District Court to grant Price's Motion to Suppress and Dismiss.

/S/ INGRID GUSTAFSON

---

[8] Despite Price's contention that his warrantless arrest was an unlawful seizure, the District Court did not address this issue, but instead considered only the legality of the later probationary search of the vehicle. However, the District Court's conclusion that there was "reasonable suspicion to authorize a probation search" was based in substantial part on evidence Poole learned after and as a result of the unlawful arrest. Thus, the District Court's legal conclusion as to the search was incorrect.

10

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR